**JOSEPH v. TRAVIS COUNTY. (No. 7241.)**

Court of Civil Appeals of Texas. Austin.
June 27, 1928.

Rehearing Denied July 11, 1928.

1. Convicts ⟐11—Convict-hiring bond held to show on its face who were principal and sureties (Rev. St. 1911, arts. 6249–6256).

Convict-hiring bond, executed under Rev. St. 1911, arts. 6249–6256, which contained the word "principal" after principal's signature and word "surety" after signature of each of sureties, was complete and showed on its face who were principal and sureties, notwithstanding blank spaces preceding words "as principal" and "as sureties" in body of bond were not filled in.

2. Convicts ⟐11—Convict-hiring bond reciting that convict was fined in blank amount and costs of prosecution aggregating stated amount held to show that fine was assessed (Rev. St. 1911, arts. 6249–6256).

Convict-hiring bond executed under Rev. St. 1911, arts. 6249–6256, reciting that convict was fined in sum of $—— and costs of prosecution, aggregating a stated amount, *held* to sufficiently show that fine was assessed against convict, since costs of prosecution are part of fine or penalty assessed.

3. Courts ⟐121(10)—District court had jurisdiction of action on convict-hiring bond to recover penalty assessed, though amounting only to $30.40 (Rev. St. 1925, art. 1906, subd. 1; Rev. St. 1911, arts. 6249–6256).

Costs of prosecution in misdemeanor case assessed against convict are part of fine or penalty assessed, and hence, under Rev. St. 1925, art. 1906, subd. 1, and Rev. St. 1911, arts. 6249–6256, district court had jurisdiction of action against principal and sureties on convict-hiring bond for recovery of penalty assessed against convict, though amount in controversy was only $30.40.

4. Convicts ⟐8—Convict-hiring bond statutes held not impliedly repealed by statute declaring public policy to be against convict hiring (Rev. St. 1911, arts. 6174, 6249–6256).

Rev. St. 1911, arts. 6249–6256, relating to county convict-hiring bonds, *held* not to have been repealed by implication by article 6174, declaring public policy of state to be against hiring out of convicts, in view of legislative history indicating intention not to repeal county convict-hiring statutes.

5. Convicts ⟐8, 11—County convict-hiring statutes held not repealed because not incorporated in 1925 revision (Rev. St. 1911, arts. 6249–6256; Rev. St. 1925, Final Title, § 3).

In view of express saving clause contained in Rev. St. 1925, Final Title, § 3, fact that the old county convict-hiring statutes (Rev. St. 1911, arts. 6249–6256) were not incorporated in Rev. St. 1925 did not work a repeal thereof and release penalties or obligations incurred thereunder.

6. Constitutional law ⟐257—Judges ⟐42—County judge held not to have any disqualifying interest so as to constitute conviction of defendant in county court denial of due process (Const. U. S. Amend. 14).

That county judge is chief financial officer of county, presiding officer of commissioners' court, financial board of county having control of county's finances, does not constitute such a disqualifying interest as to render conviction of defendant brought into county court a denial of due process in violation of Fourteenth Amendment to Federal Constitution.

Appeal from District Court, Travis County; Geo. Calhoun, Judge.

Action by Travis County against Edward Joseph and others. Judgment for plaintiff, and defendant appeals. Affirmed.

Cofer & Cofer, of Austin, for appellant.

---

⟐For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

BLAIR, J. Travis county sued Edward Joseph as principal, and B. Sawyer and Frank Raggio as sureties, on a convict-hiring bond, executed under provision of articles 6249–6256, R. S. 1911; and on a trial to the court without a jury recovered judgment for $30.40.

The bond hired one Richard A. DeBriscoe, who had been convicted of the offense of aggravated assault in the county court of Travis county, and his punishment assessed at 30 days in jail and costs of prosecution, to appellant, Edward Joseph, who was principal on the bond.

[1] By their first four propositions Joseph and his sureties attack the sufficiency of the bond principally upon the ground that the blank spaces which were followed by the words, "as principal" and "as sureties" in the body of the bond were not filled in; and therefore the instrument was imperfect, incomplete, and unenforceable. The contentions are without merit. The original bond accompanies the record, and shows that while the blank spaces in the body of the bond were not filled in, still there appears after the signature of Edward Joseph the word "principal" and after the signature of each of the sureties the word "surety." Therefore the bond is complete and shows on its face who are the principal and sureties. It also definitely obligates the appellants to pay the "costs of prosecution * * * aggregating $37.90," of which amount $7.50 was paid when the bond was accepted and approved.

[2] The second contention is that the bond does not show that any fine was assessed against the convict. The contention is without merit. The bond recites that the convict was "fined in the sum of $——— and costs of prosecution *. * * aggregating $37.90." The pleadings in this case and the judgment of conviction show that the fine or penalty assessed against the convict was 30 days in jail and costs of prosecution. The costs of prosecution in a misdemeanor offense are a part of the fine or penalty assessed.

[3] The third complaint is that the district court was without jurisdiction to hear the case because the amount in controversy was only $30.40. This contention is based upon appellant's contention that the obligation or liability imposed by the bond was simply a contract to pay money and not to pay a forfeiture or penalty. The contention is without merit. It is too well settled to necessitate a discussion of the question that costs of prosecution in a misdemeanor case must be assessed against the convict, and that upon his failure to pay such costs he is committed to jail. The costs are therefore a part of the fine or penalty assessed, and the district court has jurisdiction over suits for the recovery of penalties such as are incorporated under provision of law in convict-hiring bonds. Arti-

cles 6249–6256 and article 1906, subd. 1, R. S. 1925.

[4] The fourth contention of appellant is that the hiring bond statutes have been repealed and the penalties and obligations incurred thereunder released, first by implication under provision of article 6174, Rev. St. 1911, article 6167, R. S. 1925, Acts of 1917, which expressly declare the public policy of this state to be against the hiring out of convicts; and, second, that old articles 6249–6256, R. S. 1911, were repealed by not being incorporated in the Revised Statutes of 1925.

The act of 1917, by the Thirty-Fifth Legislature, First Called Session, chapter 32, p. 49, reads, in part, as follows:

"Art. 6174: It is hereby declared the policy of this state to work all prisoners within the walls and upon the farms owned or leased by the state, and in no event shall the labor of a prisoner be sold to any contractor or lessee nor shall any prisoner be worked on any farm not owned or leased by the state or otherwise upon shares."

Appellants contend that while it is true the act quoted probably relates to state convicts, still the policy expressed therein is utterly at variance with the county convict-hiring statutes, and must have worked a repeal of such statutes. We do not take that view of the matter. An examination into the history of the act reveals the contrary intention on the part of the Legislature. The 1917 act recites both in its caption and the enacting clause the specific articles of the statutes which it sought to amend and repeal, and the county convict-hiring statutes were not mentioned or included. Undoubtedly the Legislature would have specifically mentioned them if it had intended to repeal them. But the intention of the Legislature not to repeal the county convict-hiring statutes by implication by virtue of the public policy expressed with reference to state convicts in the act of 1917 (article 6174 above quoted) becomes apparent when considered in light of the fact that the public policy declared therein was first declared by the Legislature in 1910 (Acts 1910, 4th Sp. Sess. p. 143, § 3), and at which time the county convict-hiring statutes were continued in force. This act of 1910 was incorporated in the 1911 Revised Statutes as article 6174, under the title "System of Prison Government," and the old county convict-hiring statutes were also incorporated in the 1911 Revised Statutes as chapter 4, articles 6249–6256, under title of "Hiring County Convicts." So, this history of the acts in question renders it clear beyond dispute that the Legislature did not intend by the 1917 act to repeal the county convict-hiring statutes.

[5] But it is further contended that since the old county convict-hiring statutes (articles 6249–6256, R. S. 1911) were left out of and not incorporated in the 1925 Revised Statutes by the codifiers, and as adopted by

the Legislature, it worked a repeal thereof, and that the penalties or obligations incurred thereunder became released. There is no merit to this contention, because of an express saving clause contained in section 3, final title to the Revised Statutes of 1925, (volume 2, p. 2419), which reads in part as follows:

"No offense committed and no liability, penalty or forfeiture, either civil or criminal, incurred prior to the time when any statute, or part thereof, shall be repealed or altered by the Revised Statutes, shall be discharged or affected by such repeal or alteration; but prosecutions and suits for such offenses, liabilities, penalties or forfeitures shall be instituted and proceeded with in all respects as if such prior statute, or part thereof, had not been repealed or altered."

[6] The fifth and remaining contention is that the original judgment of conviction was coram non judice and void because of the disqualification of the county judge who presided at that trial. It is contended that it was in violation of the due process of law inhibition of the Fourteenth Amendment to the Federal Constitution for the county judge to preside at this trial of the criminal prosecution, in that a defendant brought into the county court might with reason complain that he was not likely to get a fair trial or fair sentence from a judge who was chief financial officer of the county, the presiding officer of the commissioners' court, the financial board of the county, and having control of the county's finances, and who might by reason of his interest in these respects be inclined to assess heavy fines, because they inured to and belonged to the county, and to readily convict one charged with crime because a trial fee of $5 must be assessed in favor of the county in the event of a conviction. On principle the recent case of Dugan v. Ohio, United States Supreme Court Advance Opinions, June 1, 1928, 48 S. Ct. 439, 72 L. Ed. ——, is in point and conclusively decides the question raised contrary to appellants' contention. The following statement constituted the basis for the objection made in that case:

"That a defendant brought into court might with reason complain that he was not likely to get a fair trial or a fair sentence from a judge who as chief executive was responsible for the financial condition of the village * * * and who by his interest as mayor might be tempted to accumulate from heavy fines a large fund by which the running expenses of a small village could be paid, improvements be made and taxes reduced. This was thought not to be giving the defendant the benefit of due process of law. * * * "

And the court held as follows:

"His relation under the Xenia charter, as one of five members of the city commission, to the fund contributed to by his fines as judge, or to the executive or financial policy of the city, is remote. We agree with the Supreme Court of Ohio in its view that the principles announced in the Tumey Case do not cover this."

In the case of Richardson v. State, 4 S.W.(2d) 79, the Court of Criminal Appeals of this state thoroughly and well considered the disqualifying "interest" of a county judge in view of the constitutional inhibition here invoked, and held that "his interest was too remote, speculative, and trivial to disqualify him." These two above mentioned authorities are conclusive of the proposition that the matters furnishing the basis of the contention here made do not reveal that the county judge had any "disqualifying interest" in the conviction complained of in this case.

From what has been said we affirm the judgment of the trial court in all things.